IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK07-41544-TLS |
| JOHN R. JOHNSON, | ) | A07-4079-TLS |
| a/k/a JOHNNY R. JOHNSON, f/d/b/a JOHN | ) | |
| JOHNSON CONSTRUCTION; and | ) | CH. 7 |
| TOBIE A. JOHNSON, | ) | |
| | ) | |
| Debtor(s). | ) | |
| BUILDERS WAREHOUSE, INC., a Nebraska | ) | |
| corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN R. JOHNSON, | ) | |
| a/k/a JOHNNY R. JOHNSON, f/d/b/a JOHN | ) | |
| JOHNSON CONSTRUCTION; and | ) | |
| TOBIE A. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

This matter is before the court on the debtor-defendants' motion for summary judgment (Fil. #21) and resistance by the plaintiff (Fil. #32). Thomas J. Watson represents the defendants, and Bradley D. Holbrook represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted as to the larceny allegations and denied as to the fraudulent representation allegations.

The debtor John Johnson operated a construction business in Kearney, Nebraska. He had a long-term business relationship with Builders Warehouse, Inc., in Kearney, Nebraska, purchasing materials and supplies there for many years. Between September 2005 and December 2006, Mr. Johnson obtained construction materials and supplies for three houses there on credit while verbally assuring the company he would be able to pay for the items. He owed Builders Warehouse money when he and his wife, Tobie, filed their Chapter 7 bankruptcy petition on August 17, 2007. Builders Warehouse filed this adversary proceeding to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Mr. Johnson admits he was having cash flow problems at the time, and

told Builders Warehouse he would pay them when he could. The parties dispute whether he intentionally made false representations regarding his ability to pay, and whether the supplier reasonably relied on whatever representations were made. The Johnsons filed a motion for summary judgment, asserting that no genuine issue of material fact exists as to either § 523(a)(2)(A) or (a)(4).

The parties agree on the following facts:

1.    John Johnson performed residential construction work as a general contractor doing business as John Johnson Construction Company from the spring of 1993 to June 2006.

2.    Mr. Johnson formed John Johnson Construction Company, L.L.C., in July 2006. He owns 51 percent of the entity, and his wife owns 49 percent.

3.    Builders Warehouse, Inc., supplied construction materials and supplies to Mr. Johnson for his construction business pursuant to an open account and credit application.

4.    Mr. Johnson purchased construction materials and supplies from Builders Warehouse from September 2005 to December 2006 pursuant to the parties' prior course of conduct.

5.    During the relevant time frame, Mr. Johnson had four accounts at Builders Warehouse: one for each of the three houses he was building – 4704 29th Avenue, 4712 29th Avenue, and 4716 29th Avenue – and a general account.

6.    Construction of the houses at 4712 and 4716 began in September 2005.

7.    4712 was completed and sold privately in June 2006.

8.    4716 was substantially completed in the fall of 2006. It was sold by Kearney State Bank at a trustee's sale in November 2007.

9.    Construction of the house at 4704 began in August 2006. It was not completed. Kearney State Bank sold it at a trustee's sale in November 2007.

10.   In approximately August 2006, Mr. Johnson's accounts at Builders Warehouse became 60 days past due. An accounts receivable specialist contacted him a number of times regarding payment arrangements. In various of those conversations, Mr. Johnson indicated he would use proceeds of the sale of one of the houses, as well as the proceeds of the cash value of a life insurance policy, to pay down his accounts.

11.   Builders Warehouse contacted Kearney State Bank and ascertained that Mr. Johnson did have a construction line of credit in place.

12.     Mr. Johnson did not bring the accounts current.

13.     At no time during the delinquency did Builders Warehouse close these accounts.

14.     In December 2006, Mr. Johnson met with Builders Warehouse managers and told them he was unable to pay the accounts.

15.     Mrs. Johnson was not involved in her husband's construction business. She did not handle the company's bookkeeping; data entry in the form of posting checks from the check register to the business's accounting software was the extent of her participation. She was an authorized signatory on the business's checking account, and wrote very few checks on the account.

16.     Mrs. Johnson co-signed promissory notes and security documents at Kearney State Bank that were required for the construction business's financing.

17.     Mrs. Johnson has never had a conversation with any personnel of Builders Warehouse about her husband's business or financial situation.

The Bankruptcy Code, at 11 U.S.C. § 523(a)(2)(A), excepts from discharge debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007).

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting

*Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). *See also Preece*, 367 B.R. at 653 (finding that the debtor's actions were more serious than simply using funds entrusted to him by customers to keep his business afloat; "Debtor had to have obtained these funds knowing that they would not be available to purchase the helicopters he promised the Plaintiffs to purchase"). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

A promise to pay a debt in the future does not constitute a misrepresentation simply because the debtor failed to pay. *Clauss v. Church (In re Church)*, 328 B.R. 544, 547 (B.A.P. 8th Cir. 2005). However, a promise to pay without the present intention to do so could violate § 523(a)(2)(A). *Shea v. Shea (In re Shea)*, 221 B.R. 491, 497 (Bankr. D. Minn. 1998).

The facts in this case indicate the debtor told the creditor he would pay down his accounts when he obtained the money to do so, whether from selling the houses he was building or from cashing in his life insurance policy. There is a dispute between the parties as to whether Mr. Johnson indicated that he had arranged additional financing to finish construction and would pay Builders Warehouse from those funds. Builders Warehouse contends that it relied on such a representation; Mr. Johnson does not recall making such a statement. Evidence from the bank indicates that he had only construction lines of credit, which he had drawn down completely and which were insufficient to pay the full costs of construction. Mr. Johnson testified in his deposition that he fully intended to pay Builders Warehouse and did use loan proceeds to make a payment on account, but ultimately he had more debt than income and, when money became available (such as from cashing in his life insurance policy), made choices as to which debts to pay. *See Dains v. Dains (In re Dains)*, 384 B.R. 241, 246 (Bankr. W.D. Mo. 2008) (finding that the fact that debtor made two payments on a promissory note, and told the creditor he would repay the balance from money he was expecting to receive, indicates the debtor did not falsely represent his intention to repay).

However, the issue here, which cannot be decided on summary judgment, appears to be whether Mr. Johnson, in an attempt to obtain additional extensions of credit, led Builders Warehouse to believe he had procured additional financing from Kearney State Bank with which to pay his accounts at Builders Warehouse. The actions taken by Builders Warehouse in calling the bank in an attempt to verify his financing, and continuing to extend credit thereafter, suggest an understanding or impression on the part of Builders Warehouse that Mr. Johnson would soon be paying his bills with funds from the bank. This is a disputed factual issue that precludes entry of summary judgment.

Next, § 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The plaintiff alleges that the debtor's retention of the materials and supplies he purchased constitutes larceny. "Larceny" is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without consent of the owner. *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 622 (Bankr. D. Neb. 1989). In this case, the debt was incurred as a result of the sale and purchase of goods. Nothing in the evidence indicates Mr. Johnson took the items

wrongfully with the intent to convert them without the creditor's consent. Larceny requires that the initial taking and possession be unlawful, and that is not the situation here.

Finally, the plaintiff's complaint includes Mrs. Johnson as a defendant on these same causes of action. There is no evidence in the record that she had any contact with Builders Warehouse in connection with the construction company's accounts there, or that she committed any of the acts complained of. Builder Warehouse has now dismissed her from the case by separate motion (Fil. #39).

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As explained above, there is a genuine issue for trial on the § 523(a)(2)A) cause of action. However, the plaintiff is unable to establish the existence of the necessary elements of its § 523(a)(4) cause of action. Therefore, the debtors' motion for summary judgment is granted in part and denied in part.

IT IS ORDERED: The debtor-defendants' motion for summary judgment (Fil. #21) is granted as to the § 523(a)(4) cause of action, and denied as to the § 523(a)(2)(A) cause of action. This matter will be scheduled for trial.

DATED:       October 2, 2008.

                                        BY THE COURT:

                                        /s/ Thomas L. Saladino
                                        Chief Judge

Notice given by the Court to:
        *Thomas J. Watson
        Bradley D. Holbrook
        U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.