IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK07-41544-TLS |
| ) | |
| JOHN R. JOHNSON, a/k/a ) | CH. 7 |
| JOHNNY R. JOHNSON, f/d/b/a JOHN ) | |
| JOHNSON CONSTRUCTION, and ) | |
| TOBIE A. JOHNSON, ) | |
| ) | |
| Debtors. ) | |
| BUILDERS WAREHOUSE, INC., ) | ADV. NO. A07-04079-TLS |
| a Nebraska corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN R. JOHNSON, a/k/a ) | |
| JOHNNY R. JOHNSON, f/d/b/a JOHN ) | |
| JOHNSON CONSTRUCTION, and ) | |
| TOBIE A. JOHNSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This adversary proceeding came on for trial on January 13, 2009. Bradley D. Holbrook appeared for Plaintiff Builders Warehouse, Inc. ("Builders"), and Thomas Watson appeared for Defendant John R. Johnson ("Johnson").[1] The parties stipulated as to the admissibility of the exhibits filed at Fils. #45-#137. The parties have now filed closing argument briefs and this matter is ready for decision. This Memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

Johnson operated a construction business in Kearney, Nebraska. He had a long-term business relationship with Builders in Kearney, Nebraska, purchasing materials and supplies there on credit for many years. In 2005 and 2006, he obtained construction materials and supplies for three houses and still owed Builders money when he and his wife filed their Chapter 7 bankruptcy petition on August 17, 2007. Builders filed this adversary proceeding to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(4). This Court previously granted summary judgment in favor of Johnson with respect to the § 523(a)(4) cause of action, leaving only the § 523(a)(2)(A) cause of action for this trial.

---

[1] Tobie A. Johnson was previously dismissed as a defendant in this proceeding (Fil. #43).

*Findings of Fact*

Based on the record from the earlier summary judgment motion and the facts presented at trial, I make the following findings of facts:

1. Johnson performed residential construction work as a general contractor doing business as "John Johnson Construction Company" from the spring of 1993 until June 2006. In July 2006, he formed "John Johnson Construction, L.L.C.," which he owns with his wife.

2. Builders supplied construction materials and supplies to Johnson for his construction business pursuant to an open account. For the relevant time period of September 2005 to December 2006, Johnson purchased construction materials and supplies from Builders pursuant to the parties' prior course of conduct.

3. During the relevant time frame, Johnson had four accounts at Builders: one for each of the three houses he was building – 4704 29th Avenue; 4712 29th Avenue; and 4716 29th Avenue – and a general account.

4. Construction of the houses at 4712 and 4716 began in September 2005. 4712 was completed and sold privately in June 2006. 4716 was substantially completed in the fall of 2006 and was sold by Kearney State Bank at a trustee's sale in November 2007. Construction of 4704 began in August 2006, and was not completed. Kearney State Bank sold it at a trustee's sale in November 2007.

5. In June 2006, Johnson was ready to close on the sale of 4712 to a private purchaser, but the closing would not produce enough proceeds to pay all of his debts related to construction of that house. In order to close, Johnson needed a lien release from Builders. While there is some dispute as to the content of the discussions, the evidence is clear that Builders agreed to accept a payment of $40,000.00 and a short-term promissory note in the amount of $28,973.61 (payable in 21 days) in exchange for providing the lien release for closing.

6. According to Esther Javins, an employee of Builders, the lien release was provided and Builders continued to provide credit to Johnson only because Johnson promised to pay the $40,000.00 from the closing proceeds and to pay the balance owing within 21 days by cashing in a life insurance policy. Johnson admits that he had planned to take a loan on his life insurance policy to get part of the money he owed to Builders, but subsequently learned that he could only borrow $14,000.00 against the policy.

7. Upon the sale of 4712, Johnson did pay $40,000.00 to Builders, although those funds apparently came from borrowings at Kearney State Bank instead of from the closing. Johnson did not pay the promissory note in 21 days when it became due.

8. In late 2006, Johnson did borrow against the life insurance policy, but used those funds to pay an obligation to U.S. Bank instead of paying Builders. Johnson testified that he did

intend to give the life insurance loan proceeds to Builders, but ultimately decided he needed to take care of the other loan.

9.  Johnson did make some payments towards the promissory note. Specifically, he paid $8,187.15 on August 18, 2006, and $8,000.00 on September 27, 2006. After those payments, Johnson remained indebted to Builders on the promissory note in the sum of $14,213.08, plus interest.

10. In July 2006, Johnson commenced construction on 4704. Builders continued to provide Johnson credit on an open account despite the fact that he had failed to pay the promissory note within 21 days from the 4712 closing. The witnesses for Builders all testified that they had concerns regarding Johnson's ability to pay the accounts and had numerous discussions and meetings with Johnson wherein he promised to pay by surrendering his life insurance policy and/or obtaining new financing with Kearney State Bank.

11. Rather than relying solely on Johnson's promises to pay, Ms. Javins, on behalf of Builders, contacted Kearney State Bank on or about June 30, 2006, and possibly on one or more other occasions, to confirm that financing was in place. According to Ms. Javins, she asked Kearney State Bank if Johnson had a line of credit in place with the bank. Kearney State Bank confirmed that Johnson did have a line of credit, but that was all the bank was willing to discuss regarding Johnson's account.

12. Johnson did make payments to Builders on the 4704 open account. Specifically, he paid $1,405.32 on August 18, 2006; $13,844.76 on September 27, 2006; and $15,476.79 on February 2, 2007. The balance due on the 4704 account is $24,467.87, plus interest.

13. Johnson also had a general account with Builders wherein he charged items that were not necessarily specific to any individual house project. He made payments on the general account in the amount of $500.00 on June 23, 2006; $407.52 on August 18, 2006; and $187.15 in September 2006. The balance due on that account is $3,786.71, plus interest.

14. Johnson is also indebted to Builders in the amount of $44,041.64 with respect to the project at 4716, but at trial and in its closing argument brief, Builders withdrew that indebtedness from its cause of action.

15. Ultimately, Johnson's accounts with Builders were suspended after a meeting in December 2006 wherein Johnson acknowledged that no financing was in place and no further payments would be made on the accounts.

### *Discussion*

The Bankruptcy Code, at 11 U.S.C. § 523(a)(2)(A), excepts from discharge debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. To establish fraud within the context of

§ 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007).

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). *See also Preece*, 367 B.R. at 653 (finding that the debtor's actions were more serious than simply using funds entrusted to him by customers to keep his business afloat; "Debtor had to have obtained these funds knowing that they would not be available to purchase the helicopters he promised the Plaintiffs to purchase"). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

A promise to pay a debt in the future does not constitute a misrepresentation simply because the debtor failed to pay. *Clauss v. Church (In re Church)*, 328 B.R. 544, 547 (B.A.P. 8th Cir. 2005). However, a promise to pay without the present intention to do so could violate § 523(a)(2)(A). *Shea v. Shea (In re Shea)*, 221 B.R. 491, 497 (Bankr. D. Minn. 1998).

The facts in this case indicate that Johnson told Builders he would pay down his accounts when he obtained the money to do so, whether from selling the houses he was building or from cashing in his life insurance policy, or from obtaining additional financing from Kearney State Bank. Builders contends that it relied on such representations. Johnson testified that he fully intended to pay Builders and did use some loan proceeds to make payments on his accounts, but he ultimately had more debt than income and, when money became available (such as from cashing in his life insurance policy), he had to make choices as to which debts to pay.

While the extent of the promises made by Johnson remains disputed, it is clear that Johnson did make several payments to Builders in the summer and fall of 2006, as well as in January 2007.

The fact that he made those payments indicates his intention to pay as he could. *See Dains v. Dains (In re Dains)*, 384 B.R. 241, 246 (Bankr. W.D. Mo. 2008) (finding that the fact that debtor made two payments on a promissory note, and told the creditor he would repay the balance from money he was expecting to receive, indicates the debtor did not falsely represent his intention to repay). Therefore, I cannot find that Johnson made any misrepresentations regarding payment deliberately and intentionally with the intention and purpose of deceiving Builders. Further, Builders did not justifiably rely on any later representations regarding payment. In particular, Builders knew within 21 days after execution of the promissory note (resulting from the closing of 4712) that Johnson was unable to pay that note when due. Despite the fact that Johnson did not pay that promissory note within 21 days, Builders continued to provide Johnson credit for a new project and the general account. In fact, Builders took steps to independently verify Johnson's borrowing status with Kearney State Bank, which indicates Builders did not justifiably rely on Johnson, but rather conducted its own investigation.

Accordingly, I find that Builders has failed to establish fraud or misrepresentation within the context of § 523(a)(2)(A). Builders has failed to prove by a preponderance of the evidence that Johnson made any false representations with the intent and purpose of hindering or deceiving Builders. Therefore, Builders' complaint should be dismissed.

Separate judgment to be filed.

DATED: February 13, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
  *Thomas J. Watson
  Bradley D. Holbrook
  John A. Wolf
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.